**FILED**

Dec 01 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ cynthial          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

October 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>        v.<br><br>DENYS KOROTKIY,<br><br>                 Defendant. | Case No.   '22 CR2762 TWR<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 –<br>Conspiracy to Obstruct Justice;<br>Title 33, U.S.C., Sec. 1908(a) –<br>Failure to Maintain an Accurate<br>Oil Record Book; Title 18, U.S.C.,<br>Sec. 1519 – Obstruction (False<br>Document); Title 18, U.S.C.,<br>Sec. 1519 – Obstruction<br>(Destruction of Documents);<br>Title 18, U.S.C., Sec. 2(b) –<br>Causation |

The grand jury charges:

INTRODUCTORY ALLEGATIONS

1.     Defendant DENYS KOROTKIY (KOROTKIY) was at all relevant times the Chief Engineer of the Motor Vessel (MV) DONALD. As the Chief Engineer, KOROTKIY was in charge of all engine room operations, reported directly to the Master, supervised engine room crew members consisting of a Second Engineer, Third Engineer, an Oiler, a Fitter, and an Electrician, and was responsible for, among other things, shipboard control of machinery space waste, to include oily bilge water, and making entries in the vessel's Oil Record Book.

MKP:nlv:San Diego

2.     The MV DONALD was a 10,899 gross-ton, ocean-going cargo ship, with International Maritime Organization Number 9273791, and registered under the flag of Liberia.   The MV DONALD had a crew of approximately 18 individuals.

3.     The operations of large marine vessels like the MV DONALD generate large amounts of "oily bilge water" which is defined as "water which may be contaminated by oil resulting from things such as leakage or maintenance work in machinery spaces. Any liquid entering the bilge system including bilge wells, bilge piping, tank top or bilge holding tanks is considered oily bilge water." 33 C.F.R. § 151.05. This "oily bilge water" is often referred to as "bilge waste," "bilge slops," "machinery space bilge water," and "slops from bilges." Bilge waste can either be stored onboard the vessel in an approved Bilge Water Tank for discharge to an approved reception facility, or it can be collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator (OWS) and oil-sensing device known as an Oil Content Monitor (OCM).   Bilge waste may only be discharged overboard into the ocean after passing through an OWS to ensure that it contains 15 parts per million (ppm) or less of oil without dilution, as measured by the OCM. If the OCM detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm, and shuts down the pumps and/or diverts flow back to the bilges or bilge holding tanks (or bilge water tanks) in order to prevent the discharge of greater than 15 ppm of oil overboard. Studies have shown that operational discharges of oil from vessels are one of the largest anthropogenic sources of petroleum oil pollution in the oceans.

4.    On or about May 27, 2022, the U.S. Coast Guard (USCG) received a report in advance of a routine scheduled Port State Control examination of the MV DONALD. In the report, the vessel's Second Engineer claimed that Defendant KOROTKIY had ordered the crew to pump oily bilge water directly from the vessel's bilge to the Sewage Tank for discharge into the sea, bypassing the required pollution prevention equipment. On May 31, 2022, USCG inspectors boarded the MV DONALD at the Port of San Diego to conduct a routine Port State Control inspection.

5.    The United States is part of an international regime that regulates discharges of oil from vessels at sea known as the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (MARPOL). MARPOL was enacted into United States law by the Act to Prevent Pollution from Ships (APPS), 33 U.S.C. § 1901, et seq. The regulations promulgated under APPS apply to all commercial vessels that carry cargo while operating in United States waters or while at a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States.   33 C.F.R. § 151.09(a)(5).

6.    MARPOL and APPS regulations require that vessels other than oil tankers with a weight of more than 400 gross tons such as the MV DONALD, maintain a record known as an Oil Record Book wherein transfers of oil, the disposal of sludge and waste oil, and overboard discharges or disposal otherwise of bilge water that has accumulated in machinery spaces, must be fully and accurately recorded by the person or persons in charge of the operations. 33 C.F.R. § 151.25(a) and (d); MARPOL Annex I Regulation 17. The Oil Record Book must also contain entries concerning any emergency, accidental, or other exceptional discharges of oil or oily mixtures including a statement of the circumstances of,

and the reasons for, the discharge. 33 C.F.R. § 151.25(g); MARPOL Regulations 17.3; 36.4. Specifically, discharges or disposals otherwise of bilge water that has accumulated in machinery spaces must be fully recorded, without delay, in the Oil Record Book by the person in charge of the operations and each completed page of the Oil Record Book shall be signed by the Master or other person having charge of the ship. 33 C.F.R. § 151.25(h); MARPOL Annex 1 Regulations 17.4 and 36.5. The Master or other person having charge of the ship is responsible for maintaining the Oil Record Book. 33 C.F.R. § 151.25(j). Other members of the ship's crew, including Chief Engineers, may cause the Master's failure to maintain an accurate Oil Record Book under 18 U.S.C. § 2(b), and therefore be charged as a principal. The Oil Record Book must be maintained onboard the vessel for not fewer than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25(i), (k); MARPOL Regulations 17.6 and 36.7. To become a licensed engineer, defendant KOROTKIY was required to pass examinations which required him to have knowledge of the applicable MARPOL regulations.

7.   Large commercial vessels such as the MV DONALD have several large tanks used to store different types of liquids. On the MV DONALD, those tanks included Bilge Water Tank No. 92 and Sewage Tank No. 91, among many others. In order to keep track of the various quantities of liquids being stored in a vessel's different tanks, it is common for the crew to take soundings (measurements) of the liquid in each tank. Those soundings are typically taken once a day and recorded on a piece of paper known as a sounding sheet.

//

//

//

4

8.     The USCG, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 522(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law, including MARPOL and APPS.    Specifically, 14 U.S.C. § 522(a), provides: "The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance."

9.     In conducting inspections, commonly known as Port State Control inspections, USCG personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book.  The USCG is specifically authorized to examine the vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate operating procedures; whether it poses any danger to United States' ports and waters; and whether the vessel has discharged any oil in violation of MARPOL, APPS, or any applicable federal regulations.    33 C.F.R. § 151.23(a) and (c).  If the USCG finds evidence that a vessel is not in substantial compliance with MARPOL or APPS, the USCG is empowered to deny a vessel's entry into a United States port or detain the vessel

1  until it is determined that the vessel does not present an unreasonable
2  threat to the marine environment.  33 C.F.R. §§ 151.07(b) and 151.23(b).

Count 1

18 U.S.C. § 371 Conspiracy to Obstruct by Destroying Documents

10.  Paragraphs 1 through 9 of the Introductory Allegations are specifically incorporated and re-alleged herein.

11.  Beginning on or about May 30, 2022, and continuing through on or about May 31, 2022, in the Port of San Diego, and within the Southern District of California and elsewhere, defendant DENYS KOROTKIY did knowingly and willfully combine, confederate, conspire, and agree with others known and unknown to the grand jury, to:

a.  Knowingly destroy and conceal records and documents, that is, the sounding sheets for the MV DONALD, upon which the accumulation of oil residue, oily mixtures, and machinery space bilge water, as well as sewage, had been recorded, with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the USCG, a component of the Department of Homeland Security, and in relation to and in contemplation of a matter, namely, the USCG's inspection to determine the MV DONALD's compliance with MARPOL and APPS, in violation of Title 18, United States Code, Section 1519.

12.  As a manner and means of the conspiracy, defendant DENYS KOROTKIY and co-conspirators, known and unknown to the grand jury, directed and caused the concealment and destruction of the sounding sheets for the MV DONALD, upon which the accumulation of oil residue, oily mixtures, and machinery space bilge water, as well as sewage, had been recorded.

6

OVERT ACTS

The following overt acts in furtherance of the conspiracy were committed within the Southern District of California, and elsewhere:

a.   On or about May 30, 2022, a shore side manager for the corporation that operates the MV DONALD sent an email to the vessel's captain and defendant KOROTKIY in preparation for the USCG inspection, directing that, among other things, the sounding sheets upon which the accumulation of oil residue, oily mixtures, machinery space bilge water, and sewage had been recorded, be thrown away.

b.   On or about May 31, 2022, the crewmembers of the MV DONALD caused the vessel to enter the navigable waters and internal waters of the United States in the Port of San Diego, within the Southern District of California.

c.   On or about May 31, 2022, in San Diego, the crewmembers of the MV DONALD presented the vessel and its relevant documentation to the USCG members conducting the Port State Control inspection, during which no original sounding sheets were provided.

All in violation of Title 18, United States Code, Section 371.

//
//
//
//
//
//
//
//

1

2                        Count 2

     33 U.S.C. § 1908(a) Act to Prevent Pollution from Ships;

3      13.   Paragraphs 1 through 9 of the Introductory Allegations are

4 specifically incorporated and re-alleged herein.

5      14.   On or about May 31, 2022, in the port of San Diego, and within

6 the Southern District of California and elsewhere, defendant DENYS

7 KOROTKIY did knowingly fail and cause the failure to maintain an Oil

8 Record Book for the MV DONALD. Specifically, defendant KOROTKIY

9 maintained and caused to be maintained an Oil Record Book that:

10 (1) failed to record the transfers of machinery space bilge water from

11 the bilge to Sewage Tank No. 91; (2) failed to record that discharges

12 of machinery space bilge water had been made from Sewage Tank No. 91

13 without the use of a properly functioning Oily Water Separator and Oil

14 Content Meter; and (3) falsely recorded the volume of machinery space

15 bilge water transferred to and stored in the vessel's Bilge Water Tank

16 No. 92; in violation of Title 33, United States Code, Section 1908(a);

17 ~~Title 18, United States Code, Section 2(b); Title 33, Code of Federal~~

18 Regulations, Section 151.25; and MARPOL Annex I, Regulation 17.

19                        Count 3

20      18 U.S.C. § 1519 Obstruction of Justice, False Record;

21      15.   Paragraphs 1 through 9 of the Introductory Allegations are

22 specifically incorporated and re-alleged herein.

23      16.   From on or about May 14, 2022, to on or about May 31, 2022,

24 in the Port of San Diego, and within the Southern District of California

25 and elsewhere, defendant DENYS KOROTKIY did knowingly conceal, cover up,

26 falsify, and make false entries and omissions, and did knowingly cause

27 the concealment, cover up, falsification, and making of false entries

28 and omissions, in a record and document, that is, a false, fictitious,

and misleading Oil Record Book for the MV DONALD that (1) concealed the transfers of machinery space bilge water from the bilge to Sewage Tank No. 91; (2) concealed that discharges of machinery space bilge water had been made from Sewage Tank No. 91 without the use of a properly functioning Oily Water Separator and Oil Content Meter; and (3) falsely recorded the volume of machinery space bilge water transferred to and stored in the vessel's Bilge Water Tank No. 92, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the USCG, a component of the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and U.S. law; in violation of Title 18, United States Code, Sections 1519 and 2(b).

### Count 4

18 U.S.C. § 1519 Obstruction of Justice, Destruction of Records;

17.  Paragraphs 1 through 9 of the Introduction to this Indictment are specifically incorporated and re-alleged herein.

18.  Between on or about May 30, 2022, to on or about May 31, 2022, in the port of San Diego, and within the Southern District of California and elsewhere, defendant DENYS KOROTKIY did knowingly destroy, mutilate, and conceal records and documents, that is, the sounding sheets upon which the accumulation of oil residue, oily mixtures, machinery space bilge water, and sewage had been recorded for the MV DONALD, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the USCG, a component of the Department of Homeland Security, and in relation to and in contemplation

1 | of such matter, namely, a Port State Control vessel examination and
2 | inspection to determine compliance with MARPOL and U.S. law; in violation
3 | of Title 18, United States Code, Sections 1519 and 2(b).

4 |      DATED: December 1, 2022.



8 | RANDY S. GROSSMAN
9 | United States Attorney

11 | By: _____

12 | MELANIE K. PIERSON
    Assistant U.S. Attorney

14 | By: _____

15 | STEPHEN DA PONTE
    Special Asst. U.S. Attorney