KAYE ROSE & PARTNERS LLP
Anita Eilert
aeilert@kayerose.com
402 West Broadway, Suite 1220
San Diego, CA 92101
Telephone: 619.232.6555

THOMPSON, MACCOLL & BASS, LLC, P.A.
Edward S. MacColl, MBN 2658
emaccoll@thomport.com
15 Monument Sq., 4th FL
P.O. Box 447
Portland, ME 04112-0447
Telephone: 207.774.7600
Facsimile: 207.772.1039

Attorneys for Defendant
Denys Korotkiy

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No. 22 CR2762 TWR |
| v. | ) **DEFENDANT'S TRIAL MEMORANDUM** |
| DENYS KOROTKIY, | ) |
| Defendant. | ) |

NOW COMES defendant Denys Korotkiy, the former Chief Engineer of the foreign-flagged M/V DONALD, and respectfully submits this trial brief.

## BACKGROUND

This prosecution arises out of the government's extraordinary and mistaken interpretation of Coast Guard regulations and an unprecedented program of prosecuting foreign nationals for suspected high seas conduct.

As defendant Korotkiy's pending motion to dismiss Count 2 explains, the international community rejected the efforts by U.S. representatives negotiating the MARPOL treaty to allow port states to enforce high seas violations.  Instead, the treaty signatories agreed that port states could refer suspected violations to flag states, request confirmation of flag state enforcement, and arbitrate before the International Maritime Organization against any flag state that failed to enforce with sufficient vigor or failed impose sufficient penalties to deter violations.  That history was explained by EPA Executed Director Russell Train when he presented the treaty to the Senate for ratification, calling the arbitration remedy an "important lever" to ensure appropriate enforcement.  The principle of limited port state enforcement was codified in the Act to Prevent Pollution from Ships (APPS).  It allows for U.S. enforcement of the treaty against American ship everywhere, but against foreign ships only for violations in the United States.

The U.S., however, has never employed the "important lever" of arbitration to ensure flag state enforcement, nor does it defer to flag state enforcement as the treaty requires.  Instead, a group of Coast Guard officials and attorneys at the DOJ's Environmental Crimes Section have fashioned a series of expansive theories of American law to allow U.S. port state enforcement concerning suspected high seas conduct for foreign seafarers.

A keystone of the government's expansive efforts has been its interpretation of a pre-MARPOL regulation carried forward by the Coast Guard when it promulgated regulations under APPS.

The key regulations are described in the Indictment's "Legal Framework" First, "while in the United States . . . entries shall be made in the Oil Record Book on each occasion . . . whenever any of [specified] machinery space operations take place." 33 CFR §§151.09 &151.25(d).  Second, "while in the United States . . . the master. . . shall be responsible for the maintenance of [the oil record book]." 33 CFR §§151.09 &151.25(j).  The wording requiring the "maintenance" of an oil record book and

designating the "master" as the person responsible for that maintenance does not exist in the regulations prescribed by MARPOL. Instead, this phraseology was carried forward from regulations promulgated under the Oil Pollution Act of 1961, Public Law 87-167, 75 Stat. 402 ("OPA '61"), which implemented the International Convention for the Prevention of Pollution of the Sea by Oil, 1954. OPA '61 defined a ship as "a seagoing ship of American registry." Public Law 87-167 §2(i). Section 9 of OPA '61 required that there "shall be carried on every [U.S.-flagged] ship an oil record book." Section 9 imposed civil and misdemeanor penalties for false entries in the ORB *on U.S.-flagged ships only*. With respect to foreign ships, section 11 allowed the Secretary to promulgate regulations allowing designated "persons" "to require production of any records required to be kept in accordance with the convention." No penalties were prescribed or authorized, however, with respect to foreign ships' records. Instead, Section 11(b) required reference to the State Department for action under Article X of the '54 convention. Article X prescribed flag-state enforcement. Article X of the '54 convention is set forth in full at pages 81-82 of EXHIBIT A filed with the defendant's motion to dismiss Count 2 (document 53).[1] With only stylistic changes it is virtually identical to Article 6, sections (3) and (4) of MARPOL.

As the documents attached to defendant's motion to dismiss Count 2 document, when the Coast Guard proposed the "new" (but carried-forward) MARPOL/APPS regulations, the Coast Guard publicly announced the regulations were intended to prevent pollution by U.S. ships "everywhere" but by foreign ships only "while in the . . . United States." EXHIBIT A TO MOTION TO DISMISS, p. 9. The government has repeatedly

---

[1] Exhibit A to the motion an addendum collecting research materials, including the MARPOL convention, historic regulations, Congressional testimony and published Office of Management and Budget and Coast Guard documents that are important to understanding the legal issues, but can be challenging to locate.

reported to and through the Office of Management and Budget that the regulations did not and do not expand the pre-APPS ORB record-keeping requirements.[2] The current OMB report states that the Coast Guard's requirement to maintain an oil record applies only to "owners and operators of certain U.S. vessels." ID. p. 93.

Approximately twenty years *after* carrying the regulation forward, however, it first occurred to Coast Guard and/or DOJ personnel to contend that the requirement to "maintain" an ORB while in the United States could be construed to give the United States authority to prosecute inaccurate, incomplete or false ORB entries, and therefore the suspected acts underlying those entries, even if all of the suspected conduct and record-keeping took place on foreign vessels, involving only foreign citizens, *outside* U.S. territory.

To promote its worldwide enforcement efforts, government officials advertise on YouTube for foreign crewmembers to report to U.S. officials high-seas misconduct by chief engineers. One video in which a DOJ official advertises that APPS includes a "bounty provision" and that includes a headline announcing a million-dollar reward can be seen at the following address: https://www.youtube.com/watch?v=3YPanieSw6M.

None of these many YouTube videos in which the DOJ participated encourage crewmembers to insist on proper procedures or to report violations to the senior

---

[2] Included in EXHIBIT A, at pages 92-96, are documents from the OMB and USCG that demonstrate that from before MARPOL and APPS became U.S. law continuously thereafter the Coast Guard has represented that the Coast Guard's ORB record keeping requirements have not increased and apply only to U.S. ships. Additional reports going back decades confirming those historic and ongoing Coast Guard representations are available on the OMB website at https://omb.report/omb/1625-0009 and https://omb.report/omb/2115-0025.

THOMPSON, MACCOLL & BASS, LLC, P.A.
Portland. Maine

Page 4 *Defendant's Trial Memorandum*

shipboard or shoreside officials for whom they work. Instead, the videos uniformly encourage foreign crewmembers to report alleged violations to U.S. interests – home of the "bounty."

The government brings these cases regardless of whether there is evidence of substantial pollution, and it tends to assume the truth of reports by junior engine room personnel that they engaged in even ludicrously small amounts of pollution at a foreign senior officer's insistence. To facilitate its investigations and prosecutions, the government claims the vessel is liable for any fine and negotiates an "Agreement on Security" under which it receives a multi-million-dollar bond and a substantial number of crewmembers as additional "surety" for the potential fine, including targets, potential witnesses, and others, confiscating their passports or requiring their ship manager to do so. The government uses this method of holding crewmember targets because it circumvents the requirements of the Speedy Trial Act that would be implicated if it arrested them under a criminal complaint.

Defendant Korotkiy respectfully contends that the United States lacks jurisdiction over him and that he is legally and factually innocent of all charges. He submits that this prosecution is a product of government officials losing track of the limits on their authority and instituting a dangerous system where crewmembers are encouraged by the prospect of what would be viewed in their home countries as massive rewards to create false evidence of bizarre allegations for events that never occurred or that were orchestrated to get others in trouble.

## ADDITIONAL DISCUSSION

### I. The government should not be allowed to lead the vessel's Captain

Referencing, but not quoting, grand jury testimony, the Government's trial brief mistakenly argues that the vessel's captain should be treated as a witness hostile to the Government, that it should be allowed to lead him, and that the defendant on cross-examination should be prohibited from doing so. The defense respectfully disagrees. Although both the Captain and Chief Korotkiy are ethnic Russians and all of the other

detained crewmembers are Philippine nationals, there is nothing about the Captain's grand jury testimony that suggests he is hostile to the Government.

### II. The defense has materials it may use to impeach government witnesses

The Government's motion in limine implies that it believes impeachment by use of materials not exchanged in discovery is improper. For the reasons expressed in the Defendant's opposition to that motion, Defendant Korotkiy respectfully disagrees. The defense does have impeachment materials, including Jencks Act materials. It believes it is not required to disclose those materials but would do so if ordered by the Court.

### III. The case presents important questions concerning the scope and meaning of Sarbanes-Oxley

Count 1 charges a conspiracy between defendant Korotkiy and unidentified co-conspirators to violate the criminal section of the Sarbanes-Oxley law passed in response to the Enron scandal, 18 U.S.C. §1519, by supposedly agreeing "in the Southern District of California and elsewhere" to "destroy and conceal."

Count 3 charges that beginning on May 14, 2022 and continuing to May 31, 2022 Defendant Korotkiy violated section 1519 by allegedly making false entries in the ship's Oil Record Book and *by failing to make supposedly required* entries, purportedly with the intent to impede an investigation by the U.S. Coast Guard.

Defendant respectfully contends that for the reasons set forth above, the Coast Guard investigation of high seas events was not a matter "within the jurisdiction" of the Coast Guard for purposes of Sarbanes-Oxley and section 1519.

Moreover, Sarbanes-Oxley should be construed appropriately to exclude document entries made (or not made) outside the United States and expressly regulated only by foreign law.

The Ninth Circuit has narrowly defined the elements of section 1519. Most significantly, the court adopted a narrow definition of "conceal or delete" in vacating the conviction of a defendant who apparently attempted to delete various emails in the United States for the purpose of thwarting a government investigation because the

evidence showed the suspected deletion efforts could not have fully deleted the messages. *United States v. Katakis*, 800 F.3d 1017 (9th Cir. 2015). That narrow interpretation is consistent with the Supreme Court decision in *Yates v. United States*, 574 U.S. 528, 135 S. Ct. 1074, 1079, (2015), holding that fish are not "tangible objects" within the meaning of section 1519, and explaining:

> Section 1519 was enacted as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745, legislation designed to protect investors and restore trust in financial markets following the collapse of Enron. . . . [I]t would cut §1519 loose from its financial-fraud mooring to hold that it encompasses any and all objects, . . . destroyed with obstructive intent. Mindful that in Sarbanes-Oxley, Congress trained its attention on corporate and accounting deception and cover ups, we conclude that a matching construction of §1519 is in order . . .

*Yates v. United States*, 574 U.S. at 532. It would similarly strain Sarbanes-Oxley to construe that the word "document" and the words "matter within the jurisdiction of any department" to create federal criminal jurisdiction over record entries made – or not made – outside this country that, by treaty and statute, are regulated by and only by a foreign government.

The conclusion that Sarbanes-Oxley cannot be applied here is also compelled by the longstanding principle that unless Congress directs otherwise, its enactments apply only within the territorial jurisdiction of the United States. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013); *Doe v. Nestle USA, Inc.*, 788 F.3d 946 (9th Cir. 2015); *Mujica v. AirScan, Inc.*, 771 F.3d 580 (9th Cir. 2014). *United States v. Vasquez,* 899 F.3d 363, 373-74 (5th Cir. 2018); *see also Microsoft Corp. v. AT&T Corp.,* 550 U.S. 437, 454, 127 S. Ct. 1746, 167 L. Ed. 2d 737 (2007) (noting "presumption that United States law governs domestically but does not rule the world"). The Court should repudiate the government's attempt to in effect enforce MARPOL on a worldwide basis by seeking to subject a foreign citizen to U.S.

criminal jurisdiction for conduct occurring outside the United States with no demonstrable impact on this country – other than allegedly causing some other person to "fail" to have an accurate record of events that did not occur or have impact here and that relate to matters our government expressly agreed would be regulated and, if they in fact occurred, punished, only by a foreign government.

DATED: May 30, 2023     KAYE, ROSE & PARTNERS LLP


By: _____
    Anita M. Eilert
    Attorneys for Defendant
    Denys Korotkiy

DATED: May 30, 2023     THOMPSON, MACCOLL & BASS, LLC


By: /s/ Edward S. MacColl
    *pro hac vice* Attorney
    for Defendant Denys Korotkiy